UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Nathan L.,[1] | Case No. 23-cv-1310 (JWB/DJF) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Martin O'Malley, *Commissioner of Social Security Administration*, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Nathan L. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Decision"). This matter is before the Court on the parties' briefs. The undersigned considers the briefs pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. For the reasons given below, the Court recommends Plaintiff's request for relief (ECF No. 19) be granted in part, Defendant's request for relief (ECF No. 22) be denied, and this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Report and Recommendation.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

# BACKGROUND

## I. Plaintiff's Claim

Plaintiff applied for DIB and SSI on February 19, 2021 and May 14, 2021, respectively. (Soc. Sec. Admin. R. (hereinafter "R.") 227, 232.)[2] At that time he was a 39-year-old man with a high school education and past work experience as labor foreperson, brick layer, forklift operator, and staffing agency laborer. (R. 227, 232, 261, 282.) Plaintiff alleged he became disabled on December 31, 2015, resulting from: shoulder, right elbow, and knee issues; bone spurs in his neck; chronic pain; dizziness; schizoaffective disorder; post-traumatic stress disorder; and memory issues. (R. 84-85, 101-102, 259.)

## II. Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

---

[2] The Social Security administrative record (R.) is filed at ECF Nos. 13 and 14, consecutively paginated. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must then establish at step two that he has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[3] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving that he cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform other work existing in a significant number of jobs in the national economy, the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

## III.   Procedural History

The Commissioner denied Plaintiff's applications for DIB and SSI initially (R. 84-100) and on reconsideration (R. 159-166). On April 12, 2022, at Plaintiff's request (*see* R. 167), an

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

3

Administrative Law Judge ("ALJ") held a hearing on Plaintiff's applications (R. 57-75). Plaintiff and a vocational expert testified at the hearing. (R. 58.) Plaintiff was represented by an attorney. (R. 57.) After the hearing, to determine Plaintiff's eligibility for DIB, the ALJ considered whether Plaintiff was disabled between December 31, 2015, the alleged onset date of his disability, to his date last insured, June 30, 2016. (R. 12.) To determine Plaintiff's eligibility for SSI, the ALJ considered whether Plaintiff was disabled between December 30, 2020, the date Plaintiff applied for benefits, and July 11, 2022, the date of the ALJ's Decision. (R. 12.) The ALJ found Plaintiff had not been engaged in substantial gainful activity since his alleged disability onset date. (R. 14.)

For purposes of DIB, the ALJ determined that Plaintiff had: (1) non-severe impairments, including electrocution and nonfatal effects of electric current, degenerative disc disease, anxiety, and cognitive impairments; and (2) no severe impairments. (R. 14.) The ALJ determined that Plaintiff's mental impairments imposed no limitations in any functional area during the time period assessed. (R.18.) The ALJ thus ended his analysis of Plaintiff's DIB claim at step two, finding Plaintiff not disabled between December 31, 2015 and June 30, 2016. (R. 19, 37-38.)

For purposes of SSI, the ALJ determined that Plaintiff has: (1) non-severe traumatic brain injury (R. 21); and (2) multiple physical and mental impairments, which at least in combination were severe, including degenerative disc disease, substance abuse disorder, alcohol use disorder, post-traumatic stress disorder, and schizoaffective disorder, depressive type (R. 19-20). The ALJ found that Plaintiff has moderate limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself, but that Plaintiff's mental limitations do not severely limit any area of broad functioning. (R. 22-23.) The ALJ concluded that during the relevant period since

4

December 31, 2020, Plaintiff's impairments, alone or in combination, do not meet or medically equal any impairment in the Listing. (R. 21-23.)

At step four of the sequential analysis, the ALJ thoroughly catalogued the mental and physical health evidence in the record (R. 23-36), and determined that:

> [Plaintiff] has the [RFC] to perform medium work as defined in 20 CFR 416.967(c) except the claimant can frequently climb ramps and stairs and crawl and occasionally climb ladders, ropes, and scaffolds. He can occasionally reach overhead and frequently reach in all other directions. The claimant can understand, remember, and carry out simple instructions and make simple work-related decisions. He cannot work at a production rate pace such as on an assembly line. The claimant can tolerate occasional changes in the routine work environment. He can occasionally interact with supervisors, coworkers, and the general public.

(R. 23.)

The ALJ next determined that Plaintiff has no past relevant work experience (R. 36) and then evaluated whether Plaintiff can perform any job that exists in significant numbers in the national economy. (R. 36-37.) Based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff can perform such jobs, including: "laundry worker" (Dictionary of Title ("DOT" #361.684-014, with 7,000 jobs in the national economy); "industrial cleaner" (DOT #381.687-018, with 26,000 jobs in the national economy); and "warehouse worker" (DOT #922.687-058, with 20,000 jobs in the national economy). (R. 37.) The ALJ concluded on that basis that Plaintiff is not disabled for purposes of SSI. (R. 37-38.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-7), and this lawsuit followed.

## DISCUSSION

**I.      Standard of Review**

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228

F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (TNL), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

**II.     Analysis**

Plaintiff challenges only the ALJ's RFC determination as it relates to his SSI claim. (*See* ECF No. 19 at 11-18, challenging only the ALJ's RFC determination; R. 19, finding Plaintiff not

6

disabled for purposes of DIB at step two of the sequential analysis.) RFC is defined as the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a). It is the claimant's burden to prove his functional limitations related to his RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Plaintiff argues the ALJ erred in assessing his RFC by failing to: (1) limit Plaint to brief and superficial interaction, which two State Agency psychologists opined was necessary (ECF No. 19 at 11-13); and (2) properly analyze the medical opinion of psychiatric provider Nataliya Ishkova,[4] D.N.P. consistent with 20 C.F.R. §404.1520c(c) (*id.* at 13-18). Plaintiff contends each of these errors provides an independent basis to reverse the ALJ's Decision, or to remand this matter for further proceedings. (*Id.* at 18.) Defendant asks the Court to affirm the Decision on the grounds that the ALJ applied proper legal standards and that substantial evidence supports his findings. (ECF No. 22 at 13.)

1.  **The State Agency Psychologist's Opinions**

Under regulations revised in 2017, an ALJ cannot defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding, including those from medical sources. 20 C.F.R. § 404.1520c(a); *see also Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022 ) (citing 20 C.F.R. § 404.1520c(c)) ("treating physicians

---

[4] The ALJ refers to "Ms. Ishkov," in his Decision (*see* R. 34), but Plaintiff's medical record reflects that her name last name is "Ishkova" (*see* R. 1131). The Court uses the spelling that appears in the medical record.

are [no longer] entitled to special deference"). An "ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). And "an ALJ is not required to discuss every piece of evidence submitted." *Hensley*, 829 F.3d at 932 (quoting *Black v.Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). But "if an ALJ improperly evaluates the persuasiveness of prior administrative medical findings, that is a legal error subject to de novo review." *Tiffany B. v. Kijakazi*, No. 22-CV-1227 (ECT/DLM), 2023 WL 3958424, at *2 (D. Minn. May 22, 2023), *report and recommendation adopted*, 2023 WL 3955348 (D. Minn. June 12, 2023).

At the initial level, Kathleen Feil, Ph.D., opined that Plaintiff is moderately limited in his abilities to: (1) interact appropriately with the general public; and (2) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. She further opined that he is not significantly limited in his abilities to: (1) ask simple questions or request assistance; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (R. 98.) She concluded, "[Plaintiff's] ability to cope with co-workers and handle the general public would be reduced but adequate for brief and superficial contact. [Plaintiff's] ability to tolerate and respond appropriately to supervision would be reduced but adequate to handle ordinary levels of supervision found in a customary work setting." (R. 99.) At the reconsideration level, Terry Jorgenson, Psy.D., affirmed Dr. Feil's findings as persuasive and consistent with the totality of the evidence. (R. 115.)

While the ALJ found Drs. Feil and Jorgenson's opinions persuasive, he stated, "[T]he totality of the medical evidence of record convinces me that the claimant is further limited with only making simple work-related decisions, having occasional interaction with others, and not working at a production rate pace." (R. 33.) In support, he cited record evidence indicating that

Plaintiff: (1) endorsed auditory hallucinations when not intoxicated and command hallucinations when under the influence; (2) reported trauma-related flashbacks when he did not feel safe; (3) believed he had magical powers; (4) was observed to be guarded when answering questions and to laugh inappropriately after his responses; and (5) had low insight into his mental health symptoms. (R. 33-34, citing R. 1945-1946, 2197-2198, 2200-2201.)

Despite his finding that Dr. Feil and Jorgenson's opinions were persuasive, and his own conclusion that Plaintiff was actually more limited than the doctors opined, the ALJ did not limit Plaintiff to "brief and superficial contact." (R. 23.) Rather, the ALJ limited Plaintiff to "occasionally interact with supervisors, coworkers, and the general public." (R. 23.) The ALJ did not explain why he substituted the psychological experts' findings that Plaintiff could engage in "brief and superficial" interactions with others with his own finding that Plaintiff could tolerate "occasional" interactions with supervisors, coworkers, and the general public.

These terms are not synonymous. The Court explained the difference in a similar case: "'[B]rief' refers to the length of a particular interaction, and 'superficial' refers to the quality of the interaction; but 'occasional' refers to how often such interactions occur." *Tiffany B.*, 2023 WL 3958424, at *2; *see also Kenneth J.V. v. Kijakazi*, No. 22-CV-373 (KMM/DJF), 2023 WL 2394397, at *10 (D. Minn. Jan. 27, 2023), *report and recommendation adopted*, 2023 WL 2388696 (D. Minn. Mar. 7, 2023) ("[T]here is material difference between a superficial contact and an occasional contact limitation. Occasional contact describes the quantity of time spent with individuals, while superficial contact describes the quality of the interactions.") An ALJ need not expressly include a "superficial" interaction limitation when he addresses the quality of workplace interactions elsewhere in the Decision. *Lane v. O'Malley*, No. 23-1432, 2024 WL 302395, at *1 (8th Cir. Jan. 26, 2024) (omitting reference to "superficial" interaction in Plaintiff's RFC but

9

clearly limiting the quality of his workplace interactions). But that is not the case here. The ALJ did not include any limitations related to the duration or quality of Plaintiff's workplace interactions in Plaintiff's RFC, despite the ALJ's agreement with the psychological experts' findings and his own recognition that Plaintiff suffers from even more limiting mental health issues. (*See* R. 33-34, citing R. 1945-1946, 2197-2198, 2200-2201.) The ALJ's analysis gave every indication—including citations to supporting evidence—that he intended to limit Plaintiff, at a minimum, to brief and superficial interactions with others. The ALJ's failure to do so creates a break in the logical bridge between the evidence and Plaintiff's RFC. *See* SSR 96-8p, 1996 WL 374184, at *7. The Court cannot determine whether the ALJ intended to omit this limitation (and if so, why), whether he improperly conflated these terms, or whether he meant to substitute a more vocationally relevant term but then neglected to address the quality and duration of Plaintiff's workplace interactions elsewhere in the Decision. The Court should not be left "to speculate on what basis the Commissioner … denied a claim." *Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011).

Finding the ALJ erred by failing to create the requisite logical bridge between the evidence and Plaintiff's RFC, the Court next addresses whether the error was harmless. "A plaintiff bears the burden of demonstrating that an agency's error is harmful." *Tiffany B.*, 2023 WL 3958424, at *4. "An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'" *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). Defendant argues the error was harmless because Plaintiff has not shown that any of the three unskilled jobs the ALJ found Plaintiff could perform requires more than superficial interaction. (ECF No. 22 at 7-8.)

The ALJ determined that someone with Plaintiff's background and RFC could perform the jobs of laundry worker, industrial cleaner, and warehouse worker. (R. 37.) Defendant correctly notes that each of these jobs already assume a "Level 8" amount of interpersonal interaction, which is the lowest level recognized by the DOT. *See* DOT App'x B, Explanation of Data, People and Things (identifying Level 8 interactions as "[a]tending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.)"). Defendant thus argues that further limiting Plaintiff to "brief and superficial" interactions would make no difference, since Level 8 jobs already assume limited interpersonal contact. (ECF No. 22 at 7-8.) But in prefacing its description of the 8 different "levels" of "People" relationships, the DOT cautions that "each of the relationships to People represents a wide range of complexity, resulting in considerable overlap among occupations," such that "their arraignment is somewhat arbitrary and can be considered a hierarchy in only the most general sense." DOT App'x B, Explanation of Data, People, and Things (Preamble). Because the DOT itself notes that its quantification of the "level" of interpersonal interaction necessary for each job is imprecise, the Court cannot conclude that every Level 8 job necessarily satisfies a limitation to only brief and superficial interactions. *See Tiffany B.*, 2023 WL 3958424, at *5 (finding the same).

Defendant relies on cases from outside this district to argue that other courts have found similar errors harmless. He claims, "one court specifically discussed the required interaction for laundry worker, one of the jobs also identified for Plaintiff." (ECF No. 22 at 8, citing *Alie v. Berryhill*, 2017 WL 2572287, at *16 (E.D. Mo. June 14, 2017)). That case is neither binding nor directly on point, since the laundry worker position identified in *Alie* was DOT #302.685-010 (domestic laundry worker), while the position identified in this case is DOT #361.684-014 (industry laundry worker), and the job descriptions are not the same.

11

The problem in this case is that the ALJ posed no questions to the vocational expert inquiring about the various levels of interpersonal interaction required with respect to the jobs she identified, nor did he ask the vocational expert if a person limited to brief and superficial contact could perform those jobs. (*See* R. 71-74). The Court cannot substitute its own speculation about what these jobs might entail for the vocational expert's expertise. The error therefore is not harmless, because the Court cannot conclude whether there is substantial evidence to support the ALJ's finding that Plaintiff can perform the identified jobs.

A vocational expert's testimony qualifies as substantial evidence only when it is "based on a hypothetical [question] that captures the concrete consequences of the claimant's deficiencies." *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (quotation marks and citation omitted). When an RFC is incomplete, "it cannot be said that substantial evidence supports the conclusion" that Plaintiff can actually perform all aspects of the jobs the vocational expert identifies. *Vicky R. v. Saul*, Civ. No. 19-2530 (ADM/ECW), 2021 WL 536297, at *14 (D. Minn. 2021), *report and recommendation adopted,* 2021 WL 533685 (D. Minn. Feb. 12, 2021). Without any explanation of why the ALJ omitted the "brief and superficial" limitation from Plaintiff's RFC, the Court cannot determine whether the omission was purposeful or supported by substantial evidence, and therefore cannot conclude whether Plaintiff can actually perform jobs existing in the national economy.

For these reasons, the Court recommends that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C § 405(g) to allow the ALJ to complete the record. 42 U.S.C § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") On remand the ALJ should: (1) provide a

clear explanation as to why Plaintiff's RFC should or should not be further limited to brief and superficial interaction; and (2) recall a vocational expert for testimony to the extent necessary to address a new hypothetical based on any modified RFC.

### 2. Nataliya Ishkova's Medical Opinion

Plaintiff also argues that the ALJ failed to explain the supportability factor outlined in 20 C.F.R. § 404.1520c(c)(1) regarding Ms. Ishkova's medical opinion. (ECF No. 19 at 13–18.) An ALJ must explain how he considered the supportability factor in evaluating a medical source opinion. *See* 20 C.F.R. § 404.1520c(b)(2) (establishing that the Commissioner "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision."). The regulations define supportability as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

Ms. Ishkova completed a medical source statement on November 22, 2021. (R. 1016-1019.) She stated that: (1) she had been meeting with Plaintiff monthly since November 2018; (2) Plaintiff's current diagnosis was schizoaffective disorder, depressive type; (3) a traumatic brain injury contributed to Plaintiff's mental health limitations; (4) Plaintiff was being treated with neuroleptic antidepressants and antianxiety medications; and (5) Plaintiff's impairments were expected to last at least a year. (R. 1016.)

Ms. Ishkova opined that Plaintiff is extremely limited in in his abilities to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for more than 2-hour segments; (4) perform activities within a schedule; (5) maintain

regular attendance and be punctual within customary tolerances; (6) sustain an ordinary routine without special supervision; (7) work in coordination with, or proximity to, others without being distracted by them; (8) complete a normal workday and workweek without interruptions from psychologically based symptoms; (9) perform at a consistent pace without an unreasonable number and length of rest periods; (10) accept instructions and respond appropriately to criticism from supervisors; (11) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (12) respond appropriately to changes in the work setting; (13) travel to unfamiliar places or use public transportation; (14) set realistic goals or make plans independently of others; and (15) tolerate normal levels of stress.  (R. 1017.)  She further opined that Plaintiff is markedly limited in his abilities to: (1) make simple work-related decisions; (2) interact appropriately with the general public; (3) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (4) be aware of normal hazards and taking appropriate precautions.  (R. 1017.)  Ms. Ishkova also found Plaintiff moderately limited in his abilities to: (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; and (4) ask simple questions or request assistance.  (R. 1017.)  Ms. Ishkova explained that Plaintiff's limitations stem in part from significant memory impairments.  (R. 1017.)  She also found Plaintiff: (1) requires unscheduled breaks during an 8-hour workday; (2) would miss more than three days per month for his impairments; and (3) suffers from poor memory and poor sleep due to night terrors, paranoid isolation, and brain trauma, which may interfere with his ability sustain competitive employment.  (R. 1018.)

     The ALJ did not find Ms. Ishkova's medical opinion to be persuasive.  (R. 35.)  He explained, "This opinion is vague with terms such as 'moderate,' 'marked,' and 'extreme,' which

do not provide specific mental limitations that the [Plaintiff] would have when working or by stating the most that the [Plaintiff] is capable of performing." (R. 34.) The ALJ also found "Ms. Ishkov[a]'s own treatment notes do not support such severe limitations." (R. 34, citing *e.g.*, R. 1145, 1146, 1167, 1168, 1779, 1780, 1867, 1991, including multiple notes stating that Plaintiff: (1) was responding positively to medication with no reported side effect; (2) showed no evidence of mania or psychosis; and (3) was alert, able to concentrate and think logically, and responding positively to medication.) The ALJ also cited other medical evidence, which he found to be inconsistent with the severity of the limitations Ms. Ishkova opined were necessary. (R. 34-35, citing *e.g.*, R. 810, 812, 814, 1008, 1823, 1958, 1971, 2125, 2200, 2201, other providers' notes stating that Plaintiff: (1) showed cooperative behavior and demeanor and his judgment was fair; (2) appeared well, and had coherent thoughts and normal mood and speech; (3) was alert with normal and intact mood and speech; (4) demonstrated a linear thought process; (4) showed no suicidality in February 2022; and (5) could communicate effectively with staff and peers.)

Plaintiff contends the ALJ ignored the support Ms. Ishkova provided in her opinion and overlooked the substance of her treatment notes. (ECF No. 19 at 17-18.) He claims the ALJ's evaluation of Ms. Ishkova's medical opinion "can hardly be called an analysis at all," particularly her evaluation of the supportability factor. (*Id.*)

But "[n]o talismanic language is required for the ALJ to meet the requirements of [section] 404.1520c, only that the ALJ make it clear that they considered the supportability … of an opinion." *Mario O. v. Kijakazi*, No. 21-CV-2469 (NEB/ECW), 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022), *report and recommendation adopted*, 2023 WL 136590 (D. Minn. Jan. 9, 2023). And "an ALJ is not required to discuss every piece of evidence submitted." *Hensley*, 829 F.3d at 932.

15

The ALJ's decision, as previously discussed, provided a detailed summary with citations to the record explaining why he found Ms. Ishkova's opinion was not supported by her own treatment notes or medical notes from other providers. (R. 34-35, citing myriad medical notes undermining the severity of the limitations Ms. Ishkova opined were necessary.) The ALJ's determination that Ms. Ishkova's opinion was not supported by the record is thus supported by substantial evidence. (*See, e.g.*, R. 810, 812, 814, 1008, 1145, 1146, 1167, 1168, 1779, 1780, 1823, 1867, 1958, 1971, 1991, 2125, 2200, 2201, medical notes reflecting Plaintiff's overall positive response to medication, cooperative behavior, intact judgment, linear thinking, and ability to communicate with staff and peers). Plaintiff may disagree with the ALJ's findings, but this does not alter the fact that the ALJ properly evaluated Ms. Ishkova's opinion under 20 C.F.R. 404 § 404.1520c and that substantial evidence supports it. *See Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence"). To the extent Plaintiff argues the ALJ overlooked certain evidence in Ms. Ishkova's opinion, the Eighth Circuit has explained that the issue "is not whether substantial evidence exists to reverse the ALJ," but "whether substantial evidence supports the ALJ's decision." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). Here, substantial evidence clearly supports the ALJ's analysis of Ms. Ishkova's medical opinion. For these reasons, the Court recommends that Plaintiff's request for relief be denied insofar as he challenges the ALJ's evaluation of Ms. Ishkova's medical opinion.

## RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS RECEOMMENDED** that:

1. Plaintiff's Request for Relief (ECF No. [19]) be **GRANTED IN PART**;

2. Defendant's Request for Relief (ECF No. [22]) be **DENIED**;

3. The Commissioner's denial of benefits be reversed and this matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C § 405(g) for further administrative proceedings consistent with this Report and Recommendation; and

4. This matter be **DISMISSED WITH PREJUDICE**.

Dated: May 3, 2024                    *s/ Dulce J. Foster*
                                      DULCE J. FOSTER
                                      United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).